No. 7804.

SUCCESSIONS OF W. B. SAVORY AND MARGARET SAVORY. OPPOSITIONS OF HEIRS.

A real contract cannot be attacked collaterally. It can only be assailed by a direct action to annul.

The action to annul a contract is prescribed by one year from the date of the contract.

The promissory note of a decedent, executed by her in liquidation of a debt due by her for her maintenance, will be held as binding on her succession, when those who oppose its allowance fail to show that it was without consideration, or fraudulent, or a disguised donation.

APPEAL from the Parish Court of Iberville. *Cole, J.*

Barrow & Pope for administrator, appellant :'

First—The burden of proving the note fraudulent without considera-
tion, or a disguised donation, is upon the opponents. Good faith in
contracts is always presumed ; the *onus* of proof is always on him
who alleges bad faith. 24 An. 299, Succession of Navarro ; 15 A.
641 ; 29 A. 526.

Second—The note purporting to be for value, the evidence showing the
maker without means, living with Belfort Marionneaux, the burden
of showing failure of consideration is on opponents. 15 An. Hen-
derson vs. Girardeau, 383 ; 21 An. 200, Friedman & Co. vs. Hough-
ton ; *ib.* 209, Robertson vs. Dogherty.

Third—Where the evidence of want of consideration is conflicting, the
presumption is in favor of the validity of the note. 28 An. 94,
Rodriguez vs. D. Lopez ; 18 An. 95, McGuigan vs. Ocheglevich.

Fourth—That the support of a parent by one of her children is a just
charge in favor of that child on the su c?ession of the parent. C. C.
229 ; 18 A. 594.

Fifth—C. C. article 1525 (1512). The remunerative donation is not a
real donation, if the value of the services to be compensated thereby,
being appreciated in money, should be little inferior to that of the
gift. C. C. article 1526 (1513).

Sixth—That a real contract cannot be attacked except by a regular
revocatory action. 2 A. 848 ; 15 A. 302 ; 29 A. 820.

Seventh—That the revocatory action is prescribed by one year. C. C.
1994 ; Hennen's Digest, p. 1213, No. 4 ; 29 A. 285.

S. P. Greves and Charles O. Lauve for Savory, appellee :

We have alleged in our oppositions that the annuity of three hundred
dollars for three years be added to the active mass, for the reason
that it has never been paid over to the Widow Margaret as stipu-
lated in the act of donation.

The administrator admits this in his amended account, pages 14 and 15,
except as to $266 67 for medical bills, clothing, and cash alleged to
have been paid, but which was not proved, and against which we
have plead the prescription of three years in our amended opposi-
tion. Page 17.

In said amended opposition we have opposed the note of $1400, of date
18th March, 1871, and have plead thereto the prescription of five
years ; also the prescription of three years to the claim against
Mrs. Savory for board and clothing for $680 ; also the prescription
of one, three, five, and ten years against each and every item of
account in chapter 2, passive mass, included in section 1, under the
head of funeral charges, from 1 to 12 inclusive.

We oppose, also, items 1, 2, 4, 8, and 9 under the head of law-charges, as not due by either estate; also plead the prescription of three years.

Samuel Matthews for Roth, Deblieux & Co.:

The second item of the oppositions is based on C. C. articles 1497 (1484), 1533 (1520), and the donation of June 19, 1871, should be decreed null and void.

As to the third item of the oppositions, all the circumstances, attending the confection of this note, stamp it as a disguised donation, to be used in case the donation to the wife of the accountant, made March 18, 1871, should fail. The testimony of Ira Savory shows that there could have been no valid consideration for this note. "On demand," March 18, 1871, she is made to promise to pay $1400, when on that very day she had donated to her daughter every thing she had. R. 51, and testimony of Ira Savory. As a disguised donation this note exceeds the disposable portion; and it violates C. C. article 1497 (1484), in giving away all she had, reserving nothing for her support.

---

The opinion of the court was delivered by

MANNING, C. J. William B. Savory died in April, 1861, leaving a widow Margaret surviving, and five children, issue of their marriage, viz Joseph Ira, William J., Edward D., E. F., and Eliza E. who had married Belfort Marionneaux.

William J. died in April 1862, and E lward in the following December, both without issue. E. F. died in 1870, leaving a daughter, who is now the wife of Anatole Hebert. The mother, Margaret, died January 26, 1874.

All the property owned by William B. and Margaret was community, of which the widow was usufructuary. Nothing was done in settlement of his succession until her death when Marionneaux was appointed administrator of both.

Three years nearly before her death the Widow Savory made a donation by notarial act to her daughter, Mrs. Marionneaux, of her interest in a tract of land containing ten arpents front by twenty arpents in depth with improvements—her interest being an undivided one half as widow in community, and her interests in the shares of her sons William and Edward.

That land appears to have been the only property of the spouses. The consideration was her natural love and affection for her daughter, and an annuity of three hundred dollars which the daughter bound her-

self to pay her mother in quarterly instalments during the natural life of the latter.

In June 1871 Joseph Ira transferred his interest in the land to his sister, reserving the use during his life of twenty arpents of land, but in July 1876 he sold to her all his rights under that reservation for $250 in cash.

The whole tract was sold by the administrator of the two successions, "so as to determine the interest of the parties and pay the debts." It realized twenty-five hundred dollars. The funeral expenses were $244—the law charges $659.20, leaving $1,596.80 of assets, against which were ordinary debts consisting of a note to Marionneaux for $1810.60 principal and interest, and a charge of $680 for board, lodging and clothing of Mrs. Savory for thirty-four months, preferred also by Marionneaux.

Opposition was made by Mrs. Hebert complaining that the first seven charges, which are for her grandmother's burial and tomb, should not be made against her succession for the reason that she had donated to her daughter all of her interest in the land in consideration of the payment of three hundred dollars annually, and it had not been paid, and therefore these seven charges were due from and should be paid by the daughter. Why the expenses of burying a person should be paid by one who had assumed the obligation of paying her an annuity while living is not very clear. She opposes the recognition of the note as a debt because it was liquidated and settled by the donation, and the charge for board and maintenance is opposed because the daughter was bound by filial duty and by law to maintain the mother.

Ira Savory opposed the debts charged, and Roth, Deblieux & Co. creditors of Ira, opposed the tableau of distribution in recognising Mrs. Marionneaux as the transferree and vendee of Ira's share, on the ground that this transfer was in fraud of their rights, they having obtained a judgment against him for $126.66 before that transfer was made.

These oppositions produced an amendment to the tableau, by which the succession is credited with the amount of the unpaid annuity, and charged with medical bill etc. not previously charged. It is differently and confusedly stated in another manner in the pleadings, but that is the way an accountant would state it.

Mrs. Marionneaux excepted to Roth's opposition on the grounds that the donation of Ira to her was an onerous and real contract which cannot be attacked collaterally, but only by a direct action to annull it, and she pleads the prescription of one year to such action.

When Ira made the donation to his sister in June 1871, the usufruct of his father's half of the land was held by his mother, and she owned the other half. The mother had made her donation to Marionneaux in

March, 1871, of her half, of the portions of the other half which she had inherited from her two deceased sons, and of the usufruct. He had not the right therefore to the possession of any portion of the land. The right of possession was in Mrs. Marionneaux, if we concede the validity of the donation from her mother to· her. He reserved the use of twenty acres, and in that respect the donation was onerous. His subsequent relinquishment to Mrs. Marionneaux was for a valuable consideration· which he received. The testimony is conclusive that neither of these· acts was simulated, and the exception was therefore good. The sale· and donation being real, and the creditor, having neither a privilege nor a mortgage with the pact of non-alienation, cannot disregard these· acts, but must resort to the revocatory action with allegation and proof· of his debtor's insolvency. O'Hara v. Booth, 29 Ann. 817. More than a year has elapsed from the date of both of these acts as well as from the date of Roth's judgment, and the plea of prescription is also good..

Up to this time no attack had been made on the donation of the Widow Savory to Mrs. Marionneaux, but on the contrary it had been recognised, and Mrs. Hebert had pleaded it in· bar of certain charges on the account. All the opponents now join in a supplemental opposition,. attacking that donation as illegal and void for the reason that it divests the donor of all her property, and deprives some of her forced heirs of their portion of her estate.

This is contradictory pleading, and was excepted to on the grounds·· that a direct action should ·have been brought to annull it, and such action was prescribed as to the creditors of Ira, and that the creditors· only of the Widow Savory could· attack it, and there were none of her creditors attacking it. These exceptions were referred to the merits, and the result was a judgment rejecting the note held by Marionneaux as a debt of the succession, and the claim for board and sustenance— restricting the donation of the Widow Savory to the disposable portion— and awarding Roth, Deblieux & Co. so much of the share of Ira Savory as will pay their debt.

If Marionneaux' note for over $1800, principal and interest, is good, it will absorb the assets, and there will be no need to consider the question of the donation to his wife.

Mrs: Savory had no means of support except that derived from the land, and that had not yielded any revenue from 1864 to 1871, when she made the donation. During this time she lived with Marionneaux. He supported her, and certainly $1400, the principal of the note, is not an extravagant sum to charge for her maintenance during those years. *Prima facie* there was good consideration for the note. Mrs. Savory declared in 1871 in the notarial act of donation that the property had made no revenues since her husband's death, and she was unable in her

pecuniary condition to make it productive. It was incumbent on the opponents, who attack the note, to shew that it was without consideration, or fraudulent, or a disguised donation, and they have not done so.

No doubt when Mrs. Savory made the donation, the expressed object of which was to provide herself with future maintenance, Mr. Marionneaux thought it prudent to take her note for the sum he had expended for her maintenance in the past. The whole support of this old lady had to be borne by her son-in-law. She lived long enough to exhaust her whole property. Her sole surviving son and her granddaughter contributed nothing to it. The distribution gives to the latter her share of her grandfather's succession, as well as her share of her uncles, W. J. and E. P. portions. Mrs. Marionneaux had acquired all of the other interests.

The amendments prayed are the distribution to Mrs. Hebert of $245.66, and same sum to Mrs. Marionneaux in her own right, and a like sum to her as owner of Ira's portion, and the recognition of Belfort Marionneaux' as a valid debt of Mrs. Margaret Savory's succession.

It is ordered that the judgment is reversed so far as it conflicts with this distribution—that the account be amended so as to conform thereto, and as thus amended that it is affirmed, the succession paying costs.